COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona  85016
Telephone 602•252•8400

Daniel P. Quigley (009809)
Email:  DQuigley@CDQLaw.com
Daniel E. Durchslag (017213)
Email:  DDurchslag@CDQLaw.com
   Attorneys for *Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Everything Tobacco LLC, a Florida limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Circle K Procurement and Brands, Ltd., an Irish private company limited by shares,<br><br>Defendant. | Case No: _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Everything Tobacco, LLC ("Everything Tobacco") files this Complaint against Circle K Procurement and Brands, Ltd. ("CK Brands"). In support of its Complaint, Everything Tobacco alleges as follows:

**NATURE OF THE CASE**

1. Everything Tobacco's business involves importing and distributing various tobacco products, including the Canadian cigarette brand, Seneca.

2. CK Brands sources and purchases products, such as tobacco products, to be sold in various stores, including in Circle K corporate and franchise stores.

3. At the time of filing this Complaint, there are 6,634 Circle K stores in the United States. Florida has the most Circle K stores, totaling 914 corporate and franchise locations.

4. Everything Tobacco and CK Brands entered into the U.S. National Purchase Agreement (the "Agreement") on April 1, 2022. A true and correct copy of the Agreement is attached as **Exhibit A** to this Complaint.

5. By the terms of the Agreement, Everything Tobacco was to supply Circle K stores its Seneca product, in exchange for Seneca being named as the preferred Tier 4 cigarette. As an added benefit to CK Brands, Everything Tobacco negotiated for and provided significant manufacturer rebates to CK Brands on the sale of Seneca products.

6. Following a change in its internal corporate structure, CK Brands wrongfully attempted to effectively terminate the Agreement, not pursuant to the Agreement's negotiated termination provision, but by reducing the number of Circle K stores Seneca was sold in to zero.

7. Immediately prior to CK Brands' wrongful actions, and at a time when Everything Tobacco was successfully performing its obligations under the Agreement, Everything Tobacco was selling Seneca products in approximately 5700 Circle K stores throughout the United States.

8. Everything Tobacco made repeated efforts to notify CK Brands of its breach and to resolve the dispute. CK Brands simply ignored Everything Tobacco.

9. On January 4, 2024, Everything Tobacco sent a demand letter to CK Brands. A business-to-business discussion between Everything Tobacco and CK Brands representatives followed the demand letter, but CK Brands was unwilling to negotiate in good faith or remedy its breach.

10. Accordingly, Everything Tobacco brings this action alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing against CK Brands.

**PARTIES, JURISDICTION AND VENUE**

11. Plaintiff Everything Tobacco, LLC is a limited liability company incorporated in the state of Florida with its principal place of business in the state of Florida.

12. Defendant Circle K Procurement and Brands, Ltd. is an Irish private company limited by shares incorporated in the country of Ireland with its principal place of business in Ireland.

13. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332 because there is complete diversity between the parties, and Everything Tobacco seeks damages in an amount greater than $75,000.

14. Venue is proper pursuant to the forum selection clause in Section 10.8 of the Agreement.

15. In accordance with Fed. R. Civ. P. 38, Everything Tobacco demands a jury trial on all claims.

**GENERAL ALLEGATIONS**

**I.   THE AGREEMENT.**

16. Through its four U.S. distribution centers, Everything Tobacco distributes Seneca to a wide-range of retailers, from small family-owned smoke shops to large-scale retailers, like Circle K stores.

17. Everything Tobacco began importing Seneca cigarettes in 2014, working as the exclusive importer for Grand River Enterprises ("Grand River"). Grand River is the largest privately owned indigenous company in the world.

18. In support of an expanded market for its cigarettes, Grand River invested over $21 million into the Everything Tobacco/CK Brands Agreement, including via increased product output and significant manufacturer rebates.

19. Everything Tobacco's exclusive partnership with Grand River has brought to scale an international business that brings together the traditions of the indigenous communities and the robust tobacco importing industry.

3

20. Everything Tobacco began selling products to multiple Florida Circle K franchise stores in 2013. Seneca quickly became a recognized brand name in these stores such that customers began to ask for the product by name. This acquired brand recognition and goodwill meant that Seneca frequently outperformed other Tier 4 cigarettes.

21. Following its success in Florida, Everything Tobacco began to expand into other Circle K business units. This expansion included the Gulf Coast business unit, where Everything Tobacco continued to build on its relationship with CK Brand representatives.

22. As a result of Seneca's excellent sales volume in both Circle K corporate and franchise locations throughout the United States, in 2021 CK Brands and Everything Tobacco negotiated an agreement that would place Seneca products in both franchise and corporate stores throughout the United States.

23. Pursuant to the terms of the Agreement, Everything Tobacco agreed to sell and supply to CK Brands, Seneca cigarettes for sale at Circle K corporate and franchise stores throughout the United States. As a condition, CK Brands agreed to recognize Seneca as its preferred Tier 4 cigarette.

24. As part of that promise, CK Brands agreed to, among other agreements, place large signage at each point of sale, signaling that Seneca was the lowest price preferred cigarette.

25. In exchange, Everything Tobacco offered generous, above market manufacturer rebates to CK Brands for the sale of Seneca products.

26. Everything Tobacco's willingness to enter into the Agreement was, in part, based on Everything Tobacco's desire to grow Seneca's brand name recognition throughout the United States. CK Brands' representatives were made aware of this objective during the negotiation of the Agreement.

**II.  BREACH OF THE AGREEMENT.**

27. At times, during the operative period of the Agreement, Everything Tobacco representatives observed point of sale displays at Circle K stores without the agreed upon signage promoting Seneca as the preferred Tier 4 cigarette.

4



28. During the life of the Agreement, however, Seneca consistently performed well in Circle K stores. In some regions, Seneca was in the top 10 rank for overall cigarette sales. In fact, CK Brands' representatives commented on Seneca's success on several occasions.

29. On August 17, 2023, less than a year and a half into the Agreement, CK Brands representative, Jordan Rizzo, emailed Everything Tobacco representative, Georgia Tilman, stating that "Circle K has made the decision to exercise our right under Section 1.4 of our Contract." A copy of this email is attached as **Exhibit B**.

30. The Agreement contains a specific termination provision at Section 5. Under this section, CK Brands is permitted to terminate the Agreement, but only with cause, and only after providing Everything Tobacco a written notice and a 60-day cure period.

31. Rather than invoke Section 5 of the Agreement, CK Brands purported to invoke Section 1.4. This section gave CK Brands the option to increase or decrease the number of Circle K stores in which Seneca products would be sold.

32. CK Brands had the option to exercise Section 1.4 based on Seneca's sales performance in particular stores or regions. It did not allow, and was never intended to allow, CK Brands the ability to effectively terminate the Agreement.

33. At the time CK Brands invoked Section 1.4, Everything Tobacco was providing Seneca products to more than 5,700 Circle K corporate and franchise locations.

34. At no time prior to invoking Section 1.4 of the Agreement did anyone at CK Brands advise or suggest to Everything Tobacco that Seneca was underperforming, or advise or suggest any issues in the Everything Tobacco and CK Brands relationship.

35. CK Brands breached the Agreement by purporting to decrease the number of stores in which Seneca would be sold to zero, effectively terminating the Agreement, but outside of the Agreement's actual termination provision. At no time, before or after invoking Section 1.4, did CK Brands attempt to invoke Section 5 to terminate the Agreement.

36. At no time did CK Brands provide Everything Tobacco a rationale or basis for the purported "lack of performance" prompting the invocation of Section 1.4.

37. Accordingly, CK Brands has breached the terms of the Agreement.

**III.   ONGOING DAMAGE TO EVERYTHING TOBACCO.**

38. As a direct result of CK Brands' breach of the Agreement, Everything Tobacco has suffered significant harm and been prevented from enjoying the benefit of the bargain associated with the Agreement. Moreover, as a result of CK Brands' breach Everything Tobacco lost a key distributor of Seneca products, JJ Taylor.[1]

39. Everything Tobacco and JJ Taylor had been doing business with each other since 2010 and had formed a lucrative partnership. In fact, JJ Taylor was responsible for more than 55% of Everything Tobacco's business in Florida.

40. Everything Tobacco's loss of JJ Taylor as a distributor has forced Everything Tobacco to locate multiple, smaller distributors, resulting in increased expenses and a loss of revenue and profit.

41. JJ Taylor cited a lack of volume of Seneca product available in Florida as a reason for ending the long-standing partnership.

42. This is just one example of the damage suffered by Everything Tobacco as the result of CK Brands' breach of the Agreement.

## COUNT ONE

**(Breach of Contract)**

43. Everything Tobacco incorporates the factual allegations contained in paragraphs 1-42.

44. For valid consideration, the parties entered into the Agreement, which contains a specific, discrete termination provision.

45. The Agreement is a valid contract under Arizona law. Everything Tobacco has performed its obligations under the Agreement at all times.

---

[1] JJ Taylor operated under LMT Trading Company, which was formed to distribute tobacco products separate from JJ Taylor's beer and alcohol products.

6

46. By engaging in the conduct described above, CK Brands breached the Agreement. Their conduct breached the express terms of the Agreement, unfairly depriving Everything Tobacco of the reasonably expected benefits of the Agreement.

47. Everything Tobacco has been damaged by CK Brands' breach in an amount no less than $6,000,000.00 which amounts are increasing, plus accrued and accruing interest, plus accruing attorneys' fees and costs pursuant to statute, contract, or other authority.

48. Pursuant to Section 1.6 of the Agreement and A.R.S. §§ 12-341.01 and 12-341, Everything Tobacco is entitled to recovery from CK brands for its reasonable attorneys' fees and costs of this action.

## COUNT TWO

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

49. Everything Tobacco incorporates the factual allegations contained in paragraphs 1-48.

50. As described above, Everything Tobacco and CK Brands are parties to a valid and binding contractual relationship.

51. As with every contract governed by Arizona law, this contractual relationship includes an implied covenant of good faith and fair dealing, which, among other prohibitions, prohibits CK Brands from acting in such a manner as to deprive Everything Tobacco of the benefits of the contract.

52. By, among other actions, purporting to effectively terminate the Agreement under Section 1.4 rather than invoking the agreed upon termination provision, Everything Tobacco has been deprived of its right to receive the benefits of the Agreement and has been damaged by CK Brands' breach in an amount no less than $6,000,000.00, which amounts are increasing, plus accrued and accusing interest, plus accruing attorneys' fees and costs pursuant to statute, contract, or other authority.

53. Pursuant to Section 1.6 of the Agreement and A.R.S. §§ 12-341.01 and 12-341, Everything Tobacco is entitled to recovery from CK brands for its reasonable attorneys' fees and costs of this action.

7

**REQUESTED RELIEF**

Everything Tobacco requests judgment in its favor and against CK Brands as follows:

A. Awarding Everything Tobacco its actual, compensatory, and consequential damages in an amount proven at trial, including prejudgment and post-judgment interest at the highest legal rate;

B. Awarding Everything Tobacco its Attorneys' fees and costs pursuant to section 10.6 of the Agreement, Ariz.Rev.Stat. §§12-341.01 and 12-341, and any other applicable law, statute, or legal authority; and

C. Awarding Everything Tobacco any other relief the Court deems appropriate.

DATED this 22nd day of February, 2024.

COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
    Attorneys for Everything Tobacco, LLC

By:    /s/ Daniel P. Quigley
       Daniel P. Quigley
       Daniel E. Durchslag

8